UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAULINE KELLY, INDIVIDUALLY AND
ON BEHALF OF ALL HEIRS AT LAW OF
DESTRY EZELL KELLY, DECEASED;
CHRISTEN N. PETERS, INDIVIDUALLY;
and NAKEYA J. MCLENDON, INDIVIDUALLY                PLAINTIFFS

VS.                                CIVIL ACTION NO.3:07cv631TSL-JCS

KATHERINE LABOUISSE D/B/A STRAW HILL FARM,
AND JOHN DOES 1-3                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant, Katherine Labouisse d/b/a Straw Hill Farm (Straw Hill Farm), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the motion of plaintiffs Pauline Kelly, individually and on behalf of all heirs at law of Destry Ezell Kelly, deceased, and Christen N. Peters and Nakeya J. McLendon, for partial summary judgment on the issue of the ownership of the cow involved in the accident that is the subject of plaintiffs' lawsuit. These motions have been fully briefed, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion for summary judgment should be granted and plaintiffs' motion for partial summary judgment should be denied.

Plaintiffs brought this action against defendant Straw Hill Farm seeking to recover damages resulting from an automobile collision with a cow. The accident occurred in the early morning hours of May 10, 2006, when Destry Kelly, driving his vehicle in a

northwesterly direction on Ford's Creek Road, in Pearl River County, Mississippi, suddenly came upon a cow in the road. According to the complaint, Kelly did not have time to take evasive action and the vehicle struck the cow, causing the vehicle to leave the roadway and overturn against a tree. Kelly suffered fatal injuries as a result of the collision, and his two passengers, Nakeya McLendon and Christen Peters, have claimed personal injuries resulting from the crash.

Plaintiffs seek to recover against defendant Straw Hill Farm in this cause based on their allegation that Straw Hill Farm owned the cow that was in the road and struck by the Kelly vehicle and that defendant was negligent in allowing the cow to escape onto the road.[1] Defendant has moved for summary judgment, contending

---

[1] Under the law, a livestock owner has a duty to keep its livestock from escaping and getting onto a road. Mississippi Code Annotated § 69-13-111, applies to accidents involving livestock on federal or state highways, and provides,
> The owners of livestock which through their owner's negligence are found on federal or state designated paved highways or highway rights-of-way shall be subject to any damages as a result of wrecks, loss of life or bodily injury as a result of said livestock being on the above designated highways. The burden shall be on the owner of any such livestock to prove lack of negligence.

Where the accident occurs on a county road, this statute is inapplicable, and to prevail against the livestock owner, the plaintiff has the burden to prove that the livestock owner was negligent in allowing the livestock to escape onto the road. See Barrett v. Parker, 757 So. 2d 182, 185 (Miss. 2000). The parties here dispute whether the road on which the accident occurred was a county or state road, but the court does not reach the issue of negligence, and the burden to prove negligence of the lack thereof.

2

it cannot be liable for the accident since it did not own or control the subject cow and since plaintiffs have in any event failed to produce any evidence that it was negligent. Plaintiffs oppose defendant's motion, and have filed their own motion for partial summary judgment on the issue of ownership of the cow. Because the court concludes that plaintiffs have failed to adduce sufficient competent evidence to create a genuine issue of fact on the issue of ownership of the cow, the court concludes that defendant is entitled to summary judgment.

The cow that was struck by the Kelly vehicle was a black cow bearing an ear tag with the number 29. In support of its motion for summary judgment, defendant has submitted evidence that Straw Hill Farm had no record of owing a black cow, tagged No. 29, and that Straw Hill Farm was not missing any cattle following the accident. In particular, defendant has offered the testimony of Jimmy Smith, farm manager for Straw Hill Farm, that following the accident, he checked, and re-checked, the tag number in the cow's ear against farm records and found no record of that tag number. Smith also states that he conducted two head counts following the accident and found that no cows were missing.

Defendant argues that in the face of this evidence, plaintiffs have come forward with no competent evidence to show that Straw Hill Farm owned the subject cow. Defendant notes that the only evidence cited by plaintiffs as tending to show that defendant owned the cow is (1) the fact that Jimmy Smith buried

3

the cow on Straw Hill Farm property, which plaintiffs suggest is tantamount to an admission of ownership of the cow; and (2) the deposition testimony of Talmadge Abram, the decedent's uncle, who claims that Thadio Aaron, a farm hand employed by Straw Hill Farm, told Abram that Jimmy Smith had told Aaron that Straw Hill Farm owned the cow involved in the accident. Defendant claims, however, that its having buried the cow on farm property is not probative on the issue of ownership, particularly given Smith's testimony that he buried the cow solely as an accommodation to the neighbors, to keep the decomposing carcass' odor from overwhelming those in the community. And it submits that Abram's testimony with regard to alleged statements by Aaron and Smith concerning ownership of the cow is inadmissible hearsay and therefore not competent summary judgment evidence.

In his deposition, plaintiffs' witness, Talmadge Abram, who is the uncle of the decedent Destry Kelly, testified that he saw Aaron at a local store a few weeks after the accident. He knew Aaron was working at Straw Hill Farm at the time of the accident and asked Aaron about the accident. Abram claims that Aaron admitted he helped move the dead cow from the road and back onto Straw Hill Farm property and that Aaron told him that the cow was one of Straw Hill Farm's cows. More precisely, Abram claims that Aaron told him that Jimmy Smith, the farm manager, had told him that he had identified the cow involved in the accident as a Straw Hill Farm cow. Abram testified as follows:

4

> A: I asked Thadio did he know whose cow that was down there, whose cow was that.
> Q: And what did he say.
> A: Answer he gave me, he said it was Strawberry Hill's [Straw Hill Farm] cow.
> ...
> Q: And how did he tell you how he knew that?
> A: Because he said- Jimmy said it was Strawberry Hill's [Straw Hill Farm] cow, he worked down there.
> ...
> Q: So Thadio Aaron told you that it was Strawberry Hill's [Straw Hill Farm] cow?
> A: Yeah.
> Q: And he said that he based that on the fact that Jimmy Smith told him that?
> A: Absolutely.[2]

Defendant argues that the statements claimed by Abram constitute two levels of hearsay, the alleged statement from Jimmy Smith to Thadio Aaron and the statement of Thadio Aaron to Abram. It submits that only one of these alleged statements, the statement

---

[2] Smith has maintained that Straw Hill Farm did not own the cow and that he has never said otherwise. Aaron has denied that Smith told him that Straw Hill Farm owned the subject cow and has denied that he told Abram that Smith said this. Aaron testified as follows:
> Q: Did Jimmy Smith ever tell you that the cow belonged to Katherine Labouisse?
> A: (Witness shakes head negatively.)
> Q: Is that a no?
> A: The answer is no, not no cow.
> Q: Do you know Talmadge Abram?
> A: Yeah, I know him.
> Q: Did you ever tell Talmadge Abram that you knew who owned the cow?
> A: Nope.
> Q: Who owned that cow?
> A: I don't know who owned the cow. I don't know.
> Q: All right. A couple more questions, we'll be done. Did you ever tell Talmadge Abram that Jimmy Smith told you the cow belonged to Straw Hill Farm?
> A: (Witness shakes head negatively.)
> Q: Is that a no?
> A: That's a no. I don't know where he got that from.

5

from Smith to Aaron, could potentially conform to an exception to the hearsay rule, as an admission by a party-opponent under Rule 801(d)(2). It insists, however, that the alleged statement by Aaron to Abram is indisputably hearsay, so that neither alleged statement is admissible.

It is well settled that a party may not rely on inadmissible hearsay in opposing a motion for summary judgment. See Warfield v. Byron, 436 F.3d 551, 559 (5th Cir. 2006) (noting that hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56). Under the Federal Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Abram's testimony regarding the alleged statement of Aaron, and in turn, Smith, is offered by plaintiffs as proof of the truth of their assertion that Straw Hill Farm owned the cow. However, plaintiffs maintain that the statements claimed by Abram constitute admissions of a party-opponent which, under Federal Rule of Evidence 801(d)(2), are not hearsay. Plaintiffs rely in particular on Rule 801(d)(2)(D), which states, in relevant part, that an out-of-court statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment...." Admissions of a party-opponent "are accorded generous treatment in determinations of admissibility."

6

Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003) (citing Fed. R. Evid. 801 advisory committee note, which states that "[n]o guarantee of trustworthiness is required in the case of an admission" and that admissions enjoy "freedom ... from the restrictive influences of the opinion rule and the rule requiring first-hand knowledge").

For a statement to be admissible under Rule 801(d)(2)(D), the proponent of the statement must show, through evidence independent of the proffered statement, that (1) there existed an employment relationship between the declarant and the party, (2) the statement was made during the agency or employment relationship and (3) the statement concerned a matter within the declarant's scope of employment. See U.S. v. Saks, 964 F.2d 1514, 1524 (5th Cir. 1992).

In the case at bar, Jimmy Smith's alleged statement to Abram that Straw Hill Farm owned the cow involved in the accident qualifies as an admission of a party-opponent. There is no dispute that Smith was employed by Straw Hill Farm and was so employed at the time of the alleged statement. Moreover, Smith's statement was clearly on a subject within the scope of his employment as farm manager. Indeed, defendant has asserted that Jimmy Smith had superior knowledge with regard to cattle ownership and records, and that Ms. Labouisse, owner of Straw Hill Farm, considered him "the cattle man." Thus, while defendant purports to object to Abram's testimony as "double hearsay," in fact,

7

defendant does not appear to challenge Smith's statement as hearsay. However, while Smith's statement may not be hearsay, in accordance with Federal Rule of Evidence 805, each level of a multiple-layer statement must conform to an exception to the hearsay rule. Fed. R. Evid. 805 (providing that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules"). "[T]he mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible." U.S. v. Dotson, 821 F.2d 1034, 1035 (5th Cir. 1987). See also U.S. v. Pendas-Martinez, 845 F.2d 938, 942-43 (11th Cir. 1988) (both levels of hearsay must be excepted from the hearsay rule). In the court's opinion, plaintiffs have failed to demonstrate that the alleged statement by Aaron falls within the exception of Rule 801(d)(2)(D) or any other hearsay exception.

Although there is some contradiction in the evidence regarding Aaron's status as an employee, there is substantial evidence, and most pertinently Aaron's pay records, which tends to show that Aaron was an employee of Straw Hill Farm at the time he is alleged to have made the challenged statement.[3] The real point

---

[3] In a sworn statement, Aaron testified he was not employed by Straw Hill Farm, but that he would do whatever Ms. Labouisse asked him to do around the farm. Pay records indicate that he was an employee.

8

of contention between the parties is whether Aaron's alleged statement concerns "a matter within the scope of his employment." See Nekolny v. Painter, 653 F.2d 1164, 1171 (7th Cir. 1981) ("After the fact of the agency is established, Rule 801(d)(2)(D) requires only that the statement 'concern a matter within the scope of the agency or employment.'"), cert. denied, 455 U.S. 1021, 102 S. Ct. 1719, 72 L. Ed. 2d 139 (1982).

Under Rule 801(d)(2)(D), it is not "necessary to show that an employee or agent declarant possesses speaking authority ... before a statement can be admitted against the principal." Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1565 (11th Cir. 1991) (quotation omitted). Rather, "the focus is on the scope of the declarant's employment, for it is unlikely that an agent or employee will 'make statements damaging to his principal or employer unless those statements are true.'" Miller v. TGI Friday's, Inc., No. 05 C 6445, 2007 WL 723426, 4 (N.D. Ill. Mar. 5, 2007) (quoting Nekolny v. Painter, 653 F.2d 1164, 1172 (7th Cir. 1981)). Of course, an employee's statement does not come under Rule 801(d)(2)(D) solely by virtue of his status as an employee; the statement must concern a matter within the scope of his employment:

> [A]lthough the necessary proof may certainly be circumstantial, there must be an adequate foundational showing ... that the subject of the statement 'concerned a matter' which was within [the] scope of the speaker's agency or employment. Merely showing that a statement was made by one who is identified generally as an agent or employee of the party, without some further proof as

9

> to ... the scope of his employment ... establishes neither.

Wilkinson, 920 F.2d at 1566 (quoting White Indus. v. Cessna Aircraft Co., 611 F. Supp. 1049, 1064 (W.D. Mo. 1985)).

Case law regarding whether an admission is made concerning a matter within the scope of a declarant's employment is "somewhat muddled because the great bulk of cases interpreting what is within an employee's 'scope of employment' deals with employment discrimination," Aliotta, 315 F.3d at 761, in which circumstance the courts have consistently held that "the declarant must be involved in the decision making process affecting the employment action involved (i.e., the declarant must be in management or in the company personnel function) in order for his statements to qualify as having been made within the scope of his employment," id. (citing cases). See also Abrams v. Lightolier Inc., 50 F.3d 1204, 1216 (3d Cir. 1995) (explaining that "[w]here a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer"); Ramirez v. Gonzales, 225 Fed. Appx. 203, 210, 2007 WL 329207, 6 (5th Cir. 2007) (testimony regarding statements by a secretary that manager had told her he had a problem with the plaintiff's being part of the union did not fall within Rule 801(d)(2)(D) because they concerned matters outside the scope of her employment: the

10

secretary was not involved in the decision to terminate the plaintiff's employment).

Outside the context of employment decisions, the framework for evaluating scope of employment for vicarious admission purposes is more loosely defined. In such other contexts, "[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description," Aliotta, 315 F.3d at 762, and "[t]o qualify an admission, an employee need only be performing the duties of his employment when he comes in contact with the particular facts at issue," id. Thus, in Aliotta, a wrongful death suit against the railroad, the court concluded that testimony of the defendant railroad's risk manager that "high-speed trains create dangerous vacuums along and near their sides, which can potentially suck bystanders to their deaths" qualified as an admission on the issue of the railroad's notice of this risk since the risk manager's job was to investigate accidents and his knowledge of the "vacuum theory" had been acquired during the course of his job. Id. See also Polec v. Northwest Airlines (In re Air Crash Disaster), 86 F.3d 498, 536 (6th Cir. 1996) (holding that, where an accident investigation was conducted as part of a vice-president's duties, comments made during it were admissions under Rule 801(d)(2)(D)); Miller v. TGI Friday's, Inc., 2007 WL 723426, at 4 (testimony concerning statement plaintiff overheard from seating hostess after plaintiff's slip and fall on restaurant stairs that "they should

11

have cleaned the stairs" was admission of party since it could be inferred from hostess's duty of walking guests to their assigned table that it was within the scope of her employment to notify another employee of a condition that would make it unsafe for guests to walk within the restaurant or to clean it up herself).

In contrast, the court in <u>Wilkinson v. Carnival Cruise Lines, Inc.</u>, 920 F.2d 1560 (11th Cir. 1991), held that testimony from the plaintiff's traveling companion that, following the plaintiff's accident involving a malfunctioning automatic door, a cabin steward told her "they have been having problems with that door," was inadmissible hearsay because the steward's statement did not concern a matter within the scope of his employment. <u>Id</u>. at 1564. Specifically, it was not within the scope of the cabin steward's employment to know whether a door outside of his work area was defective where there was no showing that he "legitimately acquired knowledge of the defective door in the course and scope of his employment, <u>e.g.</u> he [was] ordered to the area in question, or told of the problems with the doors in connection with his duties." <u>Id</u>. at 1567 n.12.

The court in <u>Brewster v. United States of America</u>, 860 F. Supp. 1377 (S.D. Iowa 1994), reached the same conclusion on similar facts. In <u>Brewster</u>, the plaintiff sued for injuries she received when an automatic door at the VA Medical Center malfunctioned. She sought to avoid summary judgment on the issue of the VA's notice of the allegedly defective condition of the

doors by offering affidavit testimony from her two sisters that following the accident, two employees of the VA (one who was reportedly seated at the reception desk and the other identified as perhaps being a security guard) had told them that there had been two prior accidents with automatic doors at the hospital, one involving the same door by which the plaintiff was injured. Id. at 1385. The court held the alleged statements of the VA employees were not admissible under Rule 801(d)(2)(D) as the plaintiff failed to establish that the statements made by the alleged employees concerned a matter within the scope of their respective employment. Id. at 1386.

The evidence in the case at bar establishes only that Aaron was a farm hand, who assisted with various tasks on the farm, as directed by Smith. While some of those tasks may have involved working around or with the farm's cattle, it was clearly not within the scope of his employment to keep track of the farm's inventory of cattle or to assess or determine issues of cattle ownership. While Jimmy Smith, the "cattle man," testified that he is himself able to identify all the farm's cows, some by sight and all by reference to the farm's records and ear tags used by Straw Hill Farm, there is a complete absence of evidence to suggest that Aaron knew, or that his job duties required that he know or be able to identify which cows belonged to Straw Hill Farm. Aaron's testimony confirms that he knows little about Straw Hill Farm's

13

operations, and that he has no idea who owned the cow involved in the accident.

The court recognizes that, according to Abram's own testimony, Aaron did not purport to have first-hand knowledge that the accident cow was the property of Straw Hill Farm; Abram claimed that Aaron merely purported to repeat what Jimmy Smith had told him. Yet just as it was not within the scope of Aaron's employment to be knowledgeable about the farm's cattle inventory, it was not within the scope of his employment to furnish information to others concerning the farm's cattle ownership. Simply put, this was not "a matter within the scope of [his] agency or employment." See Precision Piping and Instruments, Inc. v. E.I. du Pont de Nemours and Co., 951 F.2d 613, 620 (4th Cir. 1991) (testimony as to statement by employee relating what his manager had said about the reason for decision to terminate business with plaintiff was inadmissible hearsay since employee's authority did not extend to relaying messages by employer); cf. U.S. v. Portsmouth Paving Corp., 694 F.2d 312, 321-22 (4th Cir. 1982)(affirming admission of testimony relating statement by a secretary as to what her boss said to her in response to inquiry by caller, because while the secretary had no responsibility or authority for the decision in issue, she did have the responsibility and authority to relay messages from her boss to those who called his business office and thus her statement concerned "a matter" within the scope of her employment).

Based on the foregoing, the court concludes that Rule 801(d)(2)(D) does not cover Aaron's alleged statement.[4] As plaintiffs have offered no other arguable basis for admission of Aaron's alleged statement,[5] Abram's testimony as to the alleged statement is inadmissible hearsay which may not be considered by the court.

---

[4] While it should already be clear from the foregoing, the court would emphasize that its conclusion is not based on Aaron's status as a "low-level" employee, but rather on the fact that the subject matter of his statement simply does not "match" the duties of his employment. See Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003); see also Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1565 (11th Cir. 1991) (stating that "[n]othing in Rule 801(d)(2)(D) prevents the out-of-court statements of low-level employees from coming into evidence as non-hearsay admissions of a party-opponent in appropriate factual scenarios," and that "the position of the individual in the so-called corporate hierarchy is not in and of itself determinative of an 801(d)(2)(D) type of issue"); Tucker v. Norfolk & Western Ry. Co., 849 F. Supp. 1096, 1098 (E.D. Va. 1994) (stating that "under a liberal reading of F.R.E. 801(d)(2)(D), as long as the statement concerns a matter within the scope of the employee's agency or employment, 'virtually any employee may conceivably make admissions binding on his or her employer'") (citation omitted).

[5] Plaintiffs have argued alternatively that Aaron's alleged statement falls within the business records exception to the hearsay rule, Fed. R. Evid. Rule 803(6), or that it should be admitted pursuant to Rule 807, the residual hearsay exception. However, the former is applicable by its terms only to documentary evidence, see Fed. R. Evid. 803(6) (excepting from hearsay rule "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity...."), and Abram's testimony lacks the requisite indicia of trustworthiness to support plaintiffs' reliance on the residual exception, see Fed. F. Evid. 807 (hearsay rule does not exclude "[a] statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees trustworthiness....").

15

The only other evidence plaintiffs have offered which they claim tends to show that the cow involved in the accident was owned by Straw Hill Farm is the fact that Jimmy Smith buried the cow on Straw Hill Farm property. The evidence in this regard shows that when Jimmy Smith arrived on the scene where the accident occurred around 7:00 a.m., some five hours after the accident, he, with the assistance of a telephone crew which was working in the area, hooked the cow to a chain and dragged the cow up the road and left it by a gate to Straw Hill Farm. Later that afternoon, Smith returned and dragged the cow into a pasture on Straw Hill Farm, where he buried it along the timberline.

Defendant insists that the fact that Smith buried the cow on Straw Hill Farm property is not probative on the issue of ownership in view of Smith's testimony that he moved and then buried the cow as an accommodation to the neighbors, to get it out of their way and keep the decomposing carcass' odor from overwhelming the neighbors in the area. Smith testified that although he had determined before moving the cow onto Straw Hill Farm property that the cow did not belong to Straw Hill Farm, he believed the decision to move the cow was the "right thing to do" because the cow was already beginning to swell and was "going to be stinking shortly."

Plaintiffs argue that the fact that Smith buried the cow on Straw Hill Farm property demonstrates that the cow belonged to Straw Hill Farm. In support of their position, plaintiffs state

16

that Ms. Labouisse testified that her cows were buried on her property and that she had never allowed another person's cattle to be buried on her land. They point out that Jimmy Smith testified that the general rule is that you bury your own cattle on your property, that he has never buried Straw Hill Farm cows on other people's property and that he has never buried another farm's cattle on Straw Hill Farm property. And plaintiffs further note that a neighbor and fellow farmer, Virginia Ladner, testified that she called Jimmy Smith the night of the accident because she thought the cow could have belonged to Ms. Labouisse.

In fact, however, Ms. Ladner did not know who owned the cow involved in the accident and only called Smith because she thought the cow might belong to Straw Hill Farm; she stated that she never got close enough to really see the cow and would not have been able to identify the owner in any event. Moreover, there was testimony from witnesses that there are a number of farms in the area with cows–including black cows–and that cows from other farms sometimes get in the road. Ms. Ladner also agreed that if one of her cows were killed outside of her property, "the simplest, most logical thing would be to bury it [at the] closest place," even if the closest place was not her farm. Thus, according to Ms. Ladner, moving the cow off the road and onto Straw Hill Farm was the simplest, most logical thing to do since the cow needed to be moved and Straw Hill Farm was closest.

17

Moreover, while Ms. Labouisse did testify that cows are buried, if at all, on the property of the farm that owns them and not on someone else's property, and that she had never instructed Smith to dispose of cows that were not owned by Straw Hill Farm on Straw Hill Farm property, she also stated that no one knew who owned the accident cow and she had no problem with Smith's having buried the dead cow on Straw Hill Farm property.

In light of the evidence, the court concludes that the fact that Smith buried the dead cow on Straw Hill Farm property is not sufficient to create an issue for trial on the issue of ownership of the cow. Since plaintiffs have failed to present evidence to warrant trial on this issue, it follows that summary judgment is in order. Simply put, defendant had no duty to prevent a cow it did not own and for which it was not responsible from escaping onto the road.

Accordingly, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 19th day of February, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE